IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BONNIE CAROL MYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:08CV951-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Bonnie Carol Myers brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

On September 8, 2005, plaintiff filed applications for disability insurance benefits and supplemental security income. On April 18, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on August 23, 2007. The ALJ determined that plaintiff suffered from the severe impairments of "right hemi-paresis with normal tone, conversion disorder versus somatoform

disorder, personality disorder – cluster B features, blatant malingering, anxiety and depression[.]." (R. 25). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On October 8, 2008, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis

has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff alleges that she can no longer work because of anxiety, depression, and "right hemiparesis due to stroke."[1]  She claims that she cannot use her right leg, arm or hand. (R. 71, 82).[2]  The medical record includes a number of laboratory tests – CT scans, an MRI, an MRA, and x-rays – revealing no physical abnormalities (Exhibits 1F, 2F-8F); a neurologist's report of a consultative examination on July 24, 2006 showing no evidence to support a diagnosis of stroke and suggesting that "conversion is a more likely diagnosis" (Exhibit 17F); brief treatment notes from plaintiff's treating general practitioner, Dr. Walker, for the period from February 2002 through March 2007, showing treatment primarily for anxiety, depression, and plaintiff's complaints of pain and spasms in her right leg, arm and hand (Exhibits 9F and 20F);[3] a series of letters from Dr. Walker expressing his opinion that plaintiff is disabled due to her "severe anxiety depressive disorder" and her problems with ambulation and right-sided hemiparesis (R. 151, 153, 154, 156, 159, 185);[4] and reports of two

---

[1] Plaintiff was born on June 17, 1958.  She has a tenth grade education and past relevant work as a nursing assistant.  (R. 72, 207).

[2] In her daily activities questionnaire, plaintiff indicates on one page that she is right-handed (R. 80), and on another that she is left-handed (R. 82).

[3] In September 2005, Dr. Walker's treatment notes reflect that plaintiff "is still not moving that right side well," and that there is "[s]till a lot of emotional overlay."  In October 2005, he noted that "she is still having a lot of problems, but I think it is nerve related."  (R. 126).

[4] In April 2006, Dr. Walker indicated in a letter that plaintiff had suffered a cardiovascular accident. (R. 156).  However, six months previously, he had noted that "her MRA/MRI was normal[,]" and just over three months previously, he wrote that she "has had possibly a CVA" but that "[a]ll of her CT scans and neurological work-up has been negative so we are not exactly sure of the etiology of this. A lot of the problem seems to be anxiety and depression syndrome with conversion reaction."  (R. 126, 153).  In May 2007, Dr. Walker wrote, "I feel that most of her problems are conversion reaction associated with anxiety

consultative psychological examinations conducted by different practitioners – one in November 2005 and the other in December 2006 – both listing mental health diagnoses including anxiety and malingering, the second after administration and evaluation of an MMPI (Exhibits 10F and 19F). The record also includes a report from Dr. Willis Crawford, who conducted a consultative physical examination several months before the consultative neurological examination. He stated, based on plaintiff's daughter's report, that "[i]t appears that this lady did have a stroke back in August of this year." He concluded that she suffers from right hemiparesis, hypertension and depressive reaction. (Exhibit 11F).[5]

Plaintiff's mental health counselor wrote a letter in April 2006 indicating that "disability would be appropriate" due to mental health impairments, including bipolar disorder, and physical symptoms resulting from plaintiff's "two strokes in the past year." She wrote additional letters in July and November 2006 indicating no improvement. (R. 157, 158, 168). In an April 2007 letter, the counselor wrote:

> The recovery of a consumer becomes their responsibility after they are given proper treatment which Bonnie is being given proper treatment. Nothing we do seems to help her make any gains and depression is a very treatable illness. Recovery can be hindered by secondary gains that the consumer may desire. However, we did convince her to see clinic psychiatrist again and she agreed where as in the past she stated she preferred to see Dr. Walker.

(R. 186-87).

---

and depression. I have been asked for specific test results to document physical findings, I cannot provide that because I feel that most of it is related to anxiety and depression." (R. 185).

[5] Dr. Crawford stated, "This lady has difficulty sitting. She can barely stand. She has to have help to stand. She walks with a cane and assistance. She is unable to lift anything, carry or handle objects. She can hear and she can talk a little. She is unable to travel. This lady could not survive as she has to be cared for essentially completely." (R. 135).

4

**Evaluation of Mental Impairments**

The Commissioner's regulations set out a specific technique that is to be used at the initial and administrative hearing levels to evaluate a claimant's mental impairments. 20 C.F.R. § 404.1520a, § 416.920a. The Eleventh Circuit has summarized the ALJ's responsibility as follows:

> [Social Security] regulations require the ALJ to use the "special technique" dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments. 20 C.F.R. § 404.1520a-(c)(3-4). This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(e)(2).
>
> * * *
>
> [W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand.

Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005). In Moore, the Eleventh Circuit reversed the judgment of the district court affirming the Commissioner's decision because of the ALJ's failure either to complete a PRTF or to incorporate its mode of analysis into his findings and conclusions, despite the Court's conclusion that the ALJ's credibility determination was adequate and that the ALJ's finding that Moore retained the residual functional capacity to perform her past relevant work was supported by substantial evidence. See id. at 1212, 1213. The ALJ found that plaintiff suffers from severe mental impairments. (R. 25). Thus, his decision "*must* include a specific finding as to the degree of limitation in each of the [four identified] functional areas[.]" 20 C.F.R. §§ 404.1520a(e)(2)

416.920a(e)(2)(emphasis added).

In the decision in the present case, the ALJ has failed to include the required specific finding as to plaintiff's degree of limitation in each of the four functional areas. A psychologist testified at the administrative hearing that depending on whether the determination was based on the medical record or on plaintiff's presentation on the day of the hearing, her level of impairment would be mild to moderate in activities of daily living, social functioning and concentration, persistence and pace, with no episodes of decompensation within the eighteen months preceding the hearing. (R. 221-23). While the ALJ noted this testimony in his decision (R. 38), he did not himself make any specific findings regarding these four functional areas. The ALJ completed a form which he incorporated into his RFC determination. (Exhibit 21F, R. 40). In this form, the ALJ indicated that plaintiff has "moderate" limitations in her ability to understand, remember and carry out instructions (R. 181) and in her ability to respond appropriate to supervision, co-workers and work pressures in a work setting (R. 182). Even assuming that these findings correlate to the areas of "concentration, persistence, or pace" and "social functioning," the form includes no indication of either plaintiff's level of impairment in activities of daily living or whether she has experienced episodes of decompensation. (See Exhibit 21F). In Moore, the Eleventh Circuit determined that remand was required where "[t]he ALJ failed to even analyze or document [plaintiff's] condition in two of the PRTF's functional areas[.]" 405 F.3d at 1214. In this case, as in Moore, the ALJ has failed to analyze plaintiff's condition in two of the required functional areas. Eleventh Circuit law mandates reversal and

remand on the basis of this legal error alone.[6]

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED and this action REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion.

Done, this 2nd day of April, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] The evidence of record could very well support – with a proper analysis – a finding of no disability. However, in addition to the legal error identified above, the court notes that a finding that plaintiff suffers from a severe impairment of "conversion disorder[,]" if that is what the ALJ means by including "conversion disorder versus somatoform disorder" at step two of his analysis, is inconsistent with "blatant malingering" and also with the ALJ's RFC determination. (See DSM-IV-TR, pp. 490-98)(undifferentiated somatoform disorder and conversion disorder include physical complaints which cannot be explained by any known general medical condition or direct effects of a substance and which are "not intentionally produced or feigned, as in . . . Malingering[.]"). The ALJ's finding that plaintiff has the severe impairment of "right hemiparesis with normal tone" is likewise inconsistent with his determination that plaintiff is able to perform the exertional requirements of light work. (R. 39; see also Dr. Anderson's expert testimony regarding plaintiff's physical capabilities at R. 218 ("The conversion difficulty with walking psychologically will not improve physically until her mental health . . . processes improves. . . . if she did not have the conversion reaction symptomatology she would be limited to a full range of light work") and the vocational expert's testimony at R. 229 (the ALJ's RFC determination does not preclude light work exertionally)). The court notes, however, that plaintiff's diagnosis of conversion disorder – a mental impairment – was suggested by the examining neurologist and by plaintiff's treating general practice physician. The contrary diagnosis of malingering was made by both examining psychologists.